# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOBBY T. HEMINGWAY,<br>    Plaintiff | : <br> : <br> : | <br> <br> No. 1:19-cv-583 |
| v. | : <br> : | <br> (Judge Kane) |
| S. GOSA, et al.,<br>    Defendants | : <br> : | |

## MEMORANDUM

Before the Court is pro se Plaintiff Bobby T. Hemingway ("Plaintiff")'s amended complaint filed pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Defendants S. Gosa ("Gosa"), Ryan Parkyn ("Parkyn"), J. Walker ("Walker"), E. Stahl-Santos ("Stahl-Santos"), S. White ("White"), Catricia Howard ("Howard"), J. Potope ("Potope"), M. D. Carvajal ("Carvajal"), Ian Connors ("Connors"), and Dr. Thomas Cullen ("Cullen"). (Doc. No. 12.) For the reasons set forth below, the Court will dismiss Plaintiff's claims against Defendants Carvajal and Conners and direct service of Plaintiff's amended complaint on the remaining Defendants.

## I.   BACKGROUND

On April 3, 2019, Plaintiff, who is currently incarcerated at the Federal Correctional Institution Allenwood in White Deer, Pennsylvania ("FCI Allenwood"), filed the instant Bivens action against Defendants Gosa, Parkyn, and Walker. (Doc. No. 1.) He also filed a motion for leave to proceed in forma pauperis. (Doc. No. 2.) In his complaint, Plaintiff alleged that Defendant Gosa had "[ignored] the fact that [his] illness and joint conditions prohibit[] him from climbing stairs, top bunks and long distances." (Doc. No. 1 at 2.) Plaintiff further maintained that Defendant Gosa had prescribed pain medications that do not work. (Id. at 3.) As to Defendant Parkyn, Plaintiff alleged that he has ignored his complaints about "his pain and

illness." (Id.) Plaintiff contended that Defendant Parkyn has also ignored the conflict between him and Defendant Gosa, as Defendant Parkyn "continues to send . . . Plaintiff to [Defendant Gosa] without investigating." (Id.) Finally, Plaintiff alleged that Defendant Walker has "disregarded the fact that [he has an] illness that causes joint swelling and stops [him] from walking." (Id.) According to Plaintiff, Defendant Walker claimed that Plaintiff "refused to come to the [lieutenant's] office when in fact . . . [P]laintiff could not walk." (Id.) He maintained that Defendant Walker "refused to listen and put [him] in [the] [Special Housing Unit ("SHU")]." (Id.)

In an Administrative Order dated April 8, 2019, the Court noted that Plaintiff had used an outdated form for his motion for leave to proceed in forma pauperis and directed him to either submit the full $400.00 filing fee or an updated motion for leave to proceed in forma pauperis within thirty (30) days. (Doc. No. 5.) Plaintiff did not comply. Accordingly, in an Order dated May 16, 2019, the Court dismissed this action without prejudice. (Doc. No. 6.) A month later, the Court received a renewed motion for leave to proceed in forma pauperis and prisoner trust fund account statement from Plaintiff. (Doc. Nos. 7, 8.) In a Memorandum and Order dated June 28, 2019, the Court reopened the above-captioned case, vacated its May 16, 2019 Order, granted Plaintiff leave to proceed in forma pauperis, and dismissed his complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (Doc. Nos. 10, 11.) Specifically, the Court noted that Plaintiff had not set forth plausible First Amendment retaliation and Fourteenth Amendment due process claims against Defendant Walker and had not set forth plausible Eighth Amendment claims regarding the denial of medical care against Defendants Gosa and Parkyn. (Doc. No. 10 at 5-9.) The Court granted Plaintiff leave to file an amended complaint within thirty (30) days. (Id. at 9-10.)

The Court received Plaintiff's amended complaint on July 22, 2019. (Doc. No. 12.) In his amended complaint, he states that he was diagnosed with rheumatoid arthritis in 2013. (Doc. No. 12-1 at 1.) He arrived at FCI Allenwood on December 14, 2017. (Id.) Since then, Plaintiff has complained to Defendant Parkyn, a medical supervisor, about his medical issues. (Id. at 2.) In January of 2018, Plaintiff told Defendant Parkyn that he had not received his monthly infusions for five (5) weeks. (Id.) Defendant Parkyn told Plaintiff that "he would look into it." (Id.) In June of 2018, Plaintiff told Defendant Parkyn that he was having trouble walking up and down steps and the hill, and that he had pain in his ankle and knee. (Id.) Plaintiff also complained of receiving nine (9) processed meals over a three (3)-day period, maintaining that he could not eat these meals due to bacteria in the meats. (Id.) Despite Defendant Parkyn telling Plaintiff that he would ensure that Plaintiff received a special diet, Plaintiff continued to receive the processed meats. (Id.) Plaintiff continued to complaint about trouble walking and told Defendant Parkyn that his unit counselor, Defendant White, was not honoring his bottom bunk pass. (Id.) Plaintiff also informed Defendant Parkyn that his ankle brace did not provide adequate support. (Id.) Defendant Parkyn told Plaintiff that he would ensure that he received another brace, but Plaintiff never did. (Id. at 2-3.) In June of 2019, Plaintiff told Defendant Parkyn that he had not received his medication for three (3) months. (Id. at 3.) Despite these complaints, Plaintiff maintains that Defendant Parkyn did nothing to ensure that Plaintiff received adequate medical care. (Id.)

As to Defendant Walker, Plaintiff alleges that on December 14, 2018, he was ordered by a unit officer to immediately go to the lieutenant's office. (Id. at 4.) Plaintiff told the unit officer that he could not walk because of ankle swelling and pain. (Id.) Subsequently, three (3) officers came to Plaintiff's cell and told him to "move now." (Id.) Plaintiff "limped" to the lieutenant's

office, where Defendant Walker "yelled" at him about not coming immediately. (Id.) Plaintiff told Defendant Walker about his medical issues, but Defendant Walker told Plaintiff that he "[did] not care what was wrong." (Id.) He placed Plaintiff in a holding cell and returned with a refusal form.[1] (Id.) Plaintiff told Defendant Walker that he would not sign the refusal form. (Id.) Defendant Walker informed Plaintiff that he would be sent to the Special Housing Unit ("SHU") for failing to sign. (Id.) Plaintiff maintains that Defendant Walker cancelled his appointment to receive treatment at an outside hospital and kept him in the SHU for seven (7) days without any medication for pain. (Id. at 4-5.)

Plaintiff raises several allegations against Defendant Gosa, a Physician's Assistant ("PA") at FCI Allenwood. He maintains that during his first encounter with Defendant Gosa, he refused to look at Plaintiff's medical records. (Id. at 6.) During that visit, which Plaintiff states occurred on January 12, 2018, Defendant Gosa provided Plaintiff with a pass restricting him from working, prolonged standing, sports, and walking certain distances. (Id.) On February 16, 2018, Defendant Gosa gave Plaintiff a pass to have a cell on the bottom level of the housing unit. (Id.)

On February 21, 2018, Plaintiff saw Defendant Gosa again and told him that he was still "walking up and down a hill and 2 flights of stairs on swollen joints." (Id.) Plaintiff maintains that Defendant Gosa did nothing even after Plaintiff told him that Defendant White refused to move him to a new cell. (Id.) On March 23, 2018, Plaintiff went to an infusion center, and Defendant Gosa received the "health progress notes stating Plaintiff continues to have pain in all

---

[1] The amended complaint does not clarify what Defendant Walker believed Plaintiff had refused to do.

4

joint[s] such as knee, ankle and elbow." (Id.) Also that month, Plaintiff told Defendant Gosa that he was unable to walk because of the lack of pain medication. (Id. at 7.)

On June 7, 2018, Plaintiff and Defendant Gosa talked about the possibility of Plaintiff receiving surgery. (Id. at 8.) Plaintiff told Defendant Gosa that he was still having trouble walking distances and that he was still housed on a top tier. (Id.) Defendant Gosa "brushed [him] off." (Id.) Subsequently, Defendant Gosa was away on leave. (Id.) During this time, Plaintiff saw an orthopedist and was scheduled to receive surgery. (Id.) Plaintiff saw Defedant Gosa again on January 23, 2019. (Id.) Plaintiff told Defendant Gosa that "the snowy sidewalks and ic[]y hill ha[d] h[i]ndered [him] from getting to his meals and other call outs." (Id.) Defendant Gosa responded that "he ha[d] nothing to do with that." (Id.) On May 22, 2019, Plaintiff had surgery on his left knee and was issued a wheelchair. (Id. at 7.) He maintains that he has not received medication since March 24, 2019 and that he did not receive infusions for over three (3) months. (Id.) Plaintiff continued to complain to Defendant Gosa and maintains that Defendant Gosa told him there was "nothing he can do." (Id.)

As to Defendant White, a counselor at FCI Allenwood, Plaintiff alleges that he told Defendant White that he had previously been issued a bottom bunk pass while incarcerated at MDC Brooklyn. (Id. at 9.) He maintains that Defendant White refused to move him from his assigned top bunk. (Id.) Plaintiff subsequently obtained a copy of the bottom bunk pass and gave it to Defendant White. (Id.) Defendant White told Plaintiff "to find a cell and he would move him." (Id.) In April of 2018, Plaintiff "found someone to let him get the bottom bunk." (Id.) He was not moved until nine (9) days later. (Id.)

In June of 2018, Plaintiff told Defendant White that he now had a bottom floor pass. (Id.) Defendant White told Plaintiff that if Plaintiff showed him the pass, he would move him to a six-

man cell. (Id.) Plaintiff told Defendant White how he had trouble walking up and down the stairs. (Id.) Defendant White told Plaintiff that he "doesn't care about medical." (Id.) Plaintiff maintains that Defendant White continued to observe him walking up and down the stairs in pain and refused to move him to a bottom tier cell. (Id. at 9-10.)

As to Defendant Howard, the Warden of FCI Allenwood, Plaintiff maintains that he had spoken to her "several times" about the lack of medical care as well as a possible transfer to a medical facility. (Id. at 11.) When Plaintiff was released from the SHU, he informed Defendant Howard that he had been put in the SHU "for not being able to walk due to his ankle being swollen and in serious pain." (Id.) He also told her that he had been given medication that was not his and to which he was allergic. (Id.) On June 4, 2019, Plaintiff told Defendant Howard that he had not received medication for two (2) months; she responded that she could not do anything. (Id.) Plaintiff subsequently spoke to Defendant Howard about his complaints on two (2) separate occasions. (Id.) He maintains that Defendant Howard stated that she would "look into it" and also told him to speak to the medical staff about his issues. (Id.)

As to Defendant Cullen, Plaintiff alleges that on December 19, 2017, he informed Defendant Cullen that he had not received his monthly infusion and that he had been assigned to a top bunk. (Id. at 14.) Defendant Cullen told Plaintiff that he would look into the infusion issue, updated Plaintiff's bottom bunk pass, and "sent [Plaintiff] on [his] way." (Id.) In October of 2018, Plaintiff saw Defendant Cullen and told him that he needed to be seen because he was "having major issues." (Id.) Defendant Cullen told Plaintiff to see his PA. (Id.) Plaintiff told Defendant Cullen that his PA had been absent; Defendant Cullen still told Plaintiff to go to sick call. (Id.) Plaintiff did not see Defendant Cullen again for an official visit until November 13, 2018. (Id.) He told Defendant Cullen that he "[could] not walk at times and [was still] on the

top [tier] and no one [would] fix it." (Id.) Plaintiff maintains that Defendant Cullen told him to wait until his PA was back and ignored his issues. (Id.)

Plaintiff alleges that he informed Defendant Potope, the Health Services Administrator at FCI Allenwood, and Defendant Stahl-Santos, the Medical Director at FCI Allenwood, about his issues with not receiving medical care. (Id. at 15-16.) He told them that he believed that Defendant Gosa was not properly handling his medical issues and that he had been denied treatment and medication. (Id.) Plaintiff contends that, despite this, Defendants Potope and Stahl-Santos did nothing to ensure that Plaintiff received medical care. (Id.)

Plaintiff maintains that he utilized the Bureau of Prisons ("BOP")' administrative remedy process to attempt to receive some relief. (Id. at 12-13.) He maintains that Defendant Carvajal, the BOP's regional director, responded to his remedies "with a list of things he read off of the computer concerning medical but [i]gnored the risks of falling and further injury." (Id. at 12.) Plaintiff also alleges that Defendant Connors, the BOP's Central Office Administrator, failed to "fix the main issue" in his responses to Plaintiff's administrative remedies. (Id. at 13.)

Based on the above allegations, Plaintiff asserts claims under the First and Eighth Amendments to the United States Constitution. Specifically, he contends that Defendant Walker violated his First Amendment rights to be free from retaliation by placing him in the SHU when Plaintiff could not immediately walk to the lieutenant's office. He maintains that the other Defendants violated his Eighth Amendment rights by failing to ensure that he received adequate medical care. As relief, Plaintiff seeks compensatory and punitive damages. (Doc. No. 12 at 7.)

## II. LEGAL STANDARD

### A. Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See 28 U.S.C. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions. See 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint

must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See Iqbal, 556 U.S. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by

9

lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106) (internal quotation marks omitted)).

B. **Bivens Claims**

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards applicable to a § 1983 civil rights action. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992). To state a claim under Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

III. **DISCUSSION**

A. **Claims Against Defendants Carvajal and Connors**

It appears that Plaintiff attempts to assert claims against Defendants Carvajal and Connors by virtue of their participation in after-the-fact review of his grievances concerning his medical care. (Doc. No. 12-1 at 12-13.) Inmates, however, do not have a constitutional right to prison grievance procedures. See Lions v. Wetzel, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of

10

Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998) (table); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

Consequently, any claims asserted by Plaintiff in an attempt to establish liability against Defendants Carvajal and Connors based solely upon the substance of their respective responses, or lack thereof, to his grievances or administrative remedies does not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for liability); see also Brooks, 167 F. App'x at 925; Ramos, 2006 WL 2129148, at *3. Accordingly, the Court will dismiss Plaintiff's claims against Defendants Carvajal and Connors.

### B. Claims Against Defendant Walker

Plaintiff alleges that Defendant Walker violated his rights under the First Amendment by retaliating against him by placing him in the SHU after Plaintiff initially refused to come to the lieutenant's office because he could not walk due to his medical conditions. (Doc. No. 12-1 at 4-

11

5.) Plaintiff suggests that he was engaged in constitutionally protected activity "when he was called to go outside to a hospital for a medical issue that he was already scheduled for." (Id. at 4.) He maintains that Defendant Walker cancelled his appointment and placed him in the SHU for seven (7) days without any pain medication. (Id. at 4-5.)

The First Amendment offers protection for a wide variety of expressive activities. See U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." See id. (quoting Allah, 229 F.3d at 225). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." See id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." See id. at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Liberally construing Plaintiff's amended complaint, the Court concludes that Plaintiff has set forth a plausible First Amendment retaliation claim against Defendant Walker. Accordingly, the Court will direct service of Plaintiff's amended complaint on Defendant Walker.

## C. Claims Against Defendants Gosa, Parkyn, White, Cullen, Stahl-Santos, and Potope

Plaintiff raises Eighth Amendment claims of denial of adequate medical care against Defendants Gosa, Parkyn, White, Cullen, Stahl-Santos, and Potope. (Doc. No. 12-1.) The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) plaintiff's objectively serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994); Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." See Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. See Rouse, 182 F.3d at 197. In light of Plaintiff's allegations against Defendants Gosa, Parkyn, White, Cullen, Stahl-Santos, and Potope, as set forth above,

the Court concludes that Plaintiff has set forth plausible Eighth Amendment claims against these Defendants. Accordingly, the Court will direct service of Plaintiff's amended complaint on these Defendants.

### D. Claims Against Defendant White

Next, Plaintiff alleges that Defendant White violated his Eighth Amendment rights by failing to honor the bottom bunk and floor passes. (Doc. No. 13 at 9-10.) Liberally construing Plaintiff's amended complaint, his claim that Defendant White refused to honor his bottom bunk and floor passes can be interpreted as deliberate indifference to the need for medical treatment prescribed by prison authorities. Courts within the United States Court of Appeals for the Third Circuit have concluded that similar claims are sufficient to survive screening. See, e.g., Manns v. Sims, No. 17-cv-3815, 2018 WL 2230550, at *6 (D.N.J. May 16, 2018) (permitting Eighth Amendment claims to proceed against defendants who "denied [prisoner plaintiff] his prescribed pain medication, refused to honor his first-floor and bottom-bunk passes, and ignored his complaints of constant pain"); Adeyi v. FCI Ft. Dix Health Servs., No. 09-cv-5316, 2010 WL 1838463, at *6 (D.N.J. May 4, 2010) (concluding that bottom-bunk pass demonstrated serious medical need and that refusal "to relieve [prisoner] plaintiff from snow removal and top bunk assignment" supported allegation of deliberate indifference). Accordingly, the Court will direct service of Plaintiff's amended complaint on Defendant White.

### E. Claims Against Defendant Howard

In his amended complaint, Plaintiff suggests that Defendant Howard violated his Eighth Amendment rights by showing deliberate indifference to his complaints of not receiving medical care. (Doc. No. 12-1 at 11.) The Third Circuit has noted that a non-medical prison official can be charged "with the Eighth Amendment scienter requirement of deliberate indifference" if he or

14

she has "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Here, Plaintiff alleges that on several occasions, he personally informed Defendant Howard that he was not receiving medical treatment and medication. (Doc. No. 12-1 at 11-12.) In light of these allegations, the Court concludes that Plaintiff has set forth a plausible Eighth Amendment claim against Defendant Howard. Accordingly, the Court will direct service of his amended complaint upon her.

### F. Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). Based on the foregoing, the Court concludes that it would be futile to permit Plaintiff to amend his claims against Defendants Carvajal and Connors.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's claims against Defendants Carvajal and Connors for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will direct that Plaintiff's amended complaint be served on the remaining Defendants. An appropriate Order follows.